IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LIFELINE FOODS, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-6144-CV-SJ-ODS |
| | ) | |
| UNITED GRAIN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION DENYING DEFENDANT'S MOTION TO DISMISS

Pending is Defendant's Motion to Dismiss (Doc. #12). For the following reasons, the Motion is denied.

I. BACKGROUND

Plaintiff is a Missouri Limited Liability Company, whose sole member is AgraMarke Quality Grains Inc., a Missouri corporation with its principal place of business located in St. Joseph, Missouri. Plaintiff manufactures high-quality food products from grain. Defendant is a Kansas corporation with its principal place of business in Scandia, Kansas. Defendant produces various grain-related products, including soybean flour.

In February 2004, Defendant sent Operations Manager Tony Strnad to Plaintiff's plant. Based upon an inspection of the plant and interviews with personnel, Strnad determined Plaintiff would be capable of milling the soybean flour needed by Plaintiff to make the corn/soy blended product Plaintiff desired. Plaintiff began purchasing soybean flour from Defendant in April 2004. Plaintiff mixes the soybean flour it purchases from Defendant with corn meal and sells the finished product to the United States Department of Agriculture (USDA). The USDA supplies the blended product to developing nations around the world as food product. In August 2005, Plaintiff entered into a contract with Defendant to purchase 4.2 million pounds of soybean flour at a price of $0.1195 per pound. Plaintiff submitted a Purchase Order to Defendant on or about August 13, 2005. Defendant began delivering soybean flour to Plaintiff on or about

August 22, 2005.

Plaintiff tested the soybean flour and discovered it was contaminated with salmonella bacteria. Plaintiff had already received approximately 700,000 pounds of soybean flour from Defendant, and approximately 502,000 pounds of the soybean flour had already been processed for the USDA. The remaining 198,000 pounds of soybean flour had been placed in storage bins. Plaintiff notified Defendant it was rejecting the contaminated soybean flour and Defendant made arrangements to transport the contaminated soybean flour from Plaintiff's plant in Missouri back to its mill in Kansas and accepted return of the 198,000 pounds of soybean flour in storage. Defendant made arrangements to transport the contaminated soybean flour from Plaintiff's plant in Missouri to its mill in Kansas. However, Defendant refused to accept return of any of the soybean flour that had been processed into the corn/soy blend product.

In December 2005, Plaintiff filed an action for declaratory judgment and breach of express and implied warranties. Defendant filed this motion to dismiss, claiming the Court lacks personal jurisdiction over United Grain. In the alternative, Defendant requests this matter be transferred to the United States District Court for the District of Kansas.

II. DISCUSSION

A. Long Arm Statute

1. Transaction of Business

In order for a non-resident defendant to subject itself to the long-arm jurisdiction of this state, the suit must arise out of the activities enumerated in the long arm statute, and the defendant must have sufficient minimum contacts with Missouri to satisfy due process requirements. Chromalloy American Corp. v. Elyria Foundry Co., 955 S.W.2d 1,4 (Mo.1997). Plaintiff bears the burden of making a prima facie showing of personal jurisdiction. Tiger Mfg. Corp. v. Loadstar Material Handling Equipment, Ltd., 341 F.Supp.2d 1107, 1109 (W.D.Mo. 2004). The Missouri long arm statute provides in relevant part:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of such acts:
> (1) The transaction of any business within this state;
> (2) The making of any contract within this state . . .
> 2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction . . . is based upon this section.

Tiger Mfg. Corp., 341 F.Supp.2d at 1109. The "transaction of business" element in the long arm statute must be construed broadly so that even a single transaction may confer jurisdiction. Chromalloy American Corp., 955 S.W.2d at 4.

In this case, Defendant's Operations Manager, Jeff Strnad, personally visited Plaintiff's plaint in St. Joseph, Missouri. Based upon Strnad's visit and interviews with various Plaintiff personnel, Defendant determined Plaintiff was capable of milling the soybean flour provided by Defendant. Over a period of 18 months, Defendant supplied Plaintiff with approximately 192 truckloads of soybean flour, including the contaminated flour at issue here. Further, Defendant made arrangements for the contaminated product to be returned from Missouri to Kansas and accepted the rejected soybean flour. These factors satisfy the transaction of business requirement.

2. Due Process

The Eighth Circuit examines the following five factors to determine whether these constitutional requirements for personal jurisdiction have been met: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. Insituform Technologies, Inc. v. Reynolds, Inc., 398 F.Supp.2d 1058, 1066 (E.D. Mo. 2005). Defendant's contacts with Plaintiff in Missouri were substantial. Defendant sent its Operations Manager to the plant in Missouri to inspect, conduct interviews and determine if a business relationship should be formed. The business relationship lasted for approximately 18 months and involved the sale of approximately 9.5 million pounds

3

of product, worth approximately $1.2 million. The parties regularly corresponded by telephone, telefax, and regular and electronic mail. When Plaintiff rejected the contaminated flour, Defendant made arrangements to transport the product from Missouri to Kansas. Missouri has an interest in the shipment of defective goods to a location within its border. Finally, the Defendant's contacts with Missouri bear a direct relationship to Plaintiff's claims. Precision Const. Co. v. J.A. Slattery Co., Inc., 765 F.2d 114, 118 (8th Cir. 1985).

B. Venue

In a diversity case, venue is proper, *inter alia*, where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). The question is not which forum is "best" or where the "most substantial" events occurred; "[r]ather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994).

As stated above, Plaintiff is a Missouri corporation with its principal place of business in St. Joseph, Missouri. Defendant's Operations Manager visited Plaintiff's plant in order to facilitate the parties' business relationship. Part of Plaintiff's claim for damages against Defendant involve the result of the contaminated flour that was shipped to Missouri. Plaintiff claims the contamination caused the plant to shut down and over $1 million worth of losses. Under these circumstances, the Court concludes that a this judicial district has a substantial connection to the claim and venue is proper.

Defendant argues that the case should be transferred to the District of Kansas pursuant to 28 U.S.C. § 1404(a). The Court disagrees. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Despite the statute's specification of factors to be considered, "a district court's evaluation of a transfer motion [is not limited] to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir.), cert. denied, 522 U.S.

1029 (1997).

      Many of the anticipated witnesses, including third-party witnesses, are located within this district. All of the records relating to the business relationship between the parties and the losses incurred by lifeline are located in this district. Transfer is not justified if it will do no more than shift the inconvenience from one party to the other. <u>Terra Int'l</u>, 119 F.3d at 696-97.  To transfer venue to Kansas would only shift the inconvenience to Plaintiff, so  the Court declines to transfer this matter.

III. CONCLUSION

      The Court concludes that it has personal jurisdiction over Defendant and that venue would be proper in this judicial district. Therefore, Defendant's Motion to Dismiss, or in the alternative, Transfer Venue is denied.
IT IS SO ORDERED.

                                          /s/<u>Ortrie D. Smith</u>
                                          ORTRIE D. SMITH, JUDGE
DATE: April 3, 2006                     UNITED STATES DISTRICT COURT